UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| James J. Guerrieri, | Civil No. 06-cv-3290 (JRT/AJB) |
| Plaintiff, | |
| v. | **Report and Recommendation on the Parties' Cross Motions for Summary Judgment** |
| Michael J. Astrue, Commissioner of The Social Security Administration, | |
| Defendant. | |

---

Gary A. Ficek, Esq., for Plaintiff, James J. Guerrieri.

Rachel K. Paulose, United States Attorney and Lonnie F. Bryan, Assistant United States Attorney, for Defendant, the Commissioner of the Social Security Administration

---

## Introduction

Plaintiff James J. Guerrieri ("Plaintiff") disputes the unfavorable decision of the Commissioner of the Social Security Agency ("Commissioner") denying his claim for a period of disability and disability insurance benefits under Title II of the Social Security Act. This matter is before the court, United States Magistrate Judge Arthur J. Boylan, for a report and recommendation to the District Court on the parties' cross motions for summary judgment. *See* 28 U.S.C. § 636 (b)(1) and Local Rule 72.1. Based on the reasoning set forth below, this Court **recommends** that Plaintiff's Motion for Summary Judgment [Docket No. 6] **be granted** and that the Commissioner's Motion for Summary Judgment [Docket No. 9] **be denied**. The Court **recommends** that that this case be

**remanded** to the Commissioner for a **supplemental hearing** consistent with this opinion.

## Issues Before the Court

The primary issues before the Court are (1) whether Administrative Law Judge ("ALJ") Donald Holloway failed to develop a full and fair evidentiary record and (2) whether the ALJ's decision was based on substantial evidence.

## Procedural History

Plaintiff filed an application for Disability Insurance Benefits ("DIB") on February 10, 2004, alleging disability as of December 9, 2002.  The state agency denied Plaintiff's claim initially and on reconsideration.  Plaintiff made a timely request for a hearing before an ALJ.

On July 5, 2005, ALJ Donald Holloway conducted an administrative hearing regarding Plaintiff's application for DIB.  On January 23, 2006, ALJ Holloway denied Plaintiff's application for benefits.  Plaintiff filed a request for review to the Appeals Council and submitted additional evidence.  On June 30, 2006, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner.

On August 10, 2006, Plaintiff sought review from this Court.  Both parties filed motions for summary judgment.

## Factual Background

Plaintiff was born in 1951 and is 56 years old.  He obtained his high school diploma in 1970.  Plaintiff joined the Marines, served in Vietnam, and received an honorable discharge in 1972.  Plaintiff has an associate degree in construction technology

and private security and investigation. Plaintiff previously worked as a laborer in construction, a police officer, a driller in a window manufacturing plant, a security guard and a glazier. [Docket No. 7].

Plaintiff joined the Army National Guard in 1990 and served in Iraq during Desert Storm as a military policeman. In October 2001, he obtained a job as a glazier (making bullet resistant windows) with Norment Industries in Montgomery, Alabama. The company would provide blast proof windows and doors for the United States Embassies. [Docket No. 7].

On September 9, 2002, Plaintiff was working in the drilling department at Norment Industries on a 1,500 pound double door jam (a very large door frame). Plaintiff explained that the door came loose from its drill stands and the 1,500 pound door frame crashed down on him. Plaintiff indicated that the door struck him across right side of the base of his skull and across his back and down to his left hip. Plaintiff states that he required assistance in getting out from under the door frame. (Tr. 44-45.).

Plaintiff sought treatment from Dr. Michael Turner, the company's designated physician. Plaintiff complained of head, neck, back and leg pain and problems with equilibrium and vision focus. (Tr. 177). Dr. Turner diagnosed Plaintiff with contusions to his trunk, shoulder, knee, and head. (Tr. 175). X-rays of the lumbar spine, right shoulder, and knees were negative, but x-rays of his cervical spine revealed degenerative changes. (Tr. 181-82). Also, x-rays of his skull showed a post-operative craniotomy defect. (*Id.*).

Dr. Turner prescribed pain medications for Plaintiff and referred him for physical therapy. (Tr. 176). Dr. Turner released Plaintiff to perform restricted work duties. (*Id.*).

On September 23, 2002, Plaintiff complained of neck pain and headaches. (Tr. 167). Dr. Turner diagnosed Plaintiff with a cervical strain and lumbar strain. (*Id.*). Dr. Turner released Plaintiff to return to his regular work duties. (*Id.*).

On October 1, 2002, Plaintiff saw Dr. Johnathon Munoz with complaints of back pain. (Tr. 163). Dr. Munoz diagnosed Plaintiff with a lumbar strain, prescribed Zanaflex and Naprosyn, and released Plaintiff to perform his full-time regular work duties. (*Id.*).

On October 29, 2002, Plaintiff complained of steadily worsening back and neck pain. (Tr. 160.) Dr. Turner placed Plaintiff on restricted work duties. A CT scan of Plaintiff's lumbar spine revealed mild degenerative disc disease. (Tr. 179-80). Dr. Turner diagnosed Plaintiff with a neck and lumbar sprain and referred him to Dr. Jeffry Pirofsky. (Tr. 157-58).

Plaintiff saw Dr. Pirofsky in November 2002. (Tr. 219-22). Plaintiff complained that his pain prevented him from lifting heavy weights off the floor, walking more than one mile, or sitting more than one hour. (Tr. 220). Dr. Pirofsky prescribed pain medications and physical therapy for Plaintiff and recommended modified work duties (limited to lifting and carrying up to ten pounds with no limitations for sitting, standing, and walking) (Tr. 222, 224).

Plaintiff often called in sick because of his severe pain. (Tr. 51-52). Norment Industries terminated Plaintiff's employment in December 2002 . (Tr. 48). However,

Plaintiff continued to receive medical treatment through his employer's designated physician.

In February 2003, Dr. Pirofsky referred Plaintiff to Dr. David P. Herrick. Dr. Herrick diagnosed Plaintiff with cervical and lumbar degenerative disc disease and lumbar radiculitis. (Tr. 203). Dr. Herrick recommended that Plaintiff undergo an epidural steroid injection, which Plaintiff received. (Tr. 203, 201). Later that month, Dr. Pirofsky referred Plaintiff to Dr. Donovan Kendrick for a neurosurgical consultation (Tr. 196, 199). Dr. Kendrick reported that Plaintiff's neurological examination was normal.

On April 1, 2003, Dr. Pirofsky noted a 0% impairment rating and referred Plaintiff for a Functional Capacity Evaluation at Rehab Associates to address his work status. (Tr. 194). Plaintiff underwent a functional capacity evaluation on April 23, 2003, and he tested in the light/medium to medium/heavy range. (Tr. 189, 358-64). Consequently, Plaintiff lost his worker's compensation benefits and eventually became homeless for a certain time period. (Tr. 52).

Thereafter, Plaintiff moved from Alabama to Minnesota. He sought treatment at the Family HealthCare Center from July through September 2003. (Tr. 238-44). In February 2004, Plaintiff filed an application for DIB with the Social Security Agency.

In May 2004, Dr. Brent Hella, a state agency physician, examined Plaintiff. (Tr. 269-73). Dr. Hella noted Plaintiff's back and hip pain, reduced range of motion in his neck, a lump at the base of his skull, and some numbing down his left leg. (Tr. 272). X-rays of Plaintiff's lumbar spine revealed findings consistent with degenerative osteoarthritis at the L3-4 level. Also, x-rays of Plaintiff's cervical spine showed early

vertebral spondylosis at the C5-6 level. (Tr. 272-73). Dr. Hella diagnosed Plaintiff with post-traumatic pain secondary to cervical soft tissue injuries with some underlying degenerative changes. (Tr. 269).

In August 2004, Plaintiff saw Dr. Russom Ghebrai at the Veteran's Administration ("VA") with complaints of back pain. (Tr. 304-05). Dr. Ghebrai reported that Plaintiff displayed sciatic irritation. (Tr. 305). Dr. Ghebrai prescribed medications for Plaintiff. (Tr. 304-05).

A CT scan of Plaintiff's lumbar spine showed mild disc bulges and/or small herniations at L2-3 and L4-5, and a diffuse broad-base disc herniation at L3-4. (Tr. 310-11). A CT scan of Plaintiff's cervical spine revealed mild to moderate degenerative disc changes. (Tr. 314-15). Dr. Ghebrai ordered an electromyography (EMG) study, which revealed abnormalities consistent with a polyneuropathy of unknown etiology affecting the distal sensory motor fibers, but no definite evidence for radiculopathy or plexopathy (Tr. 291-92). Dr. Dennis G. Sollom recommended that Plaintiff follow-up with his physicians at the VA for further evaluation, treatment, and management of this problem. Dr. Ghebrai recommended that Plaintiff follow an aggressive physical therapy program to improve mobility and correct a muscle imbalance. (Tr. 304).

In January 2005, Plaintiff saw Dr. Ayman Attia-Alla at the VA with complaints of ongoing back pain. (Tr. 351-53). Dr. Attia-Alla diagnosed Plaintiff with lower back pain with scattered tenderness on the lumbar spine. Dr. Attia-Alla prescribed medications and ordered a neurological consultation and a pain management consultation. (Tr. 353).

Dr. Maria F. Dongas, neurologist, diagnosed Plaintiff with lower back pain radiating down the left leg. (Tr. 349). Dr. Dongas recommended that Plaintiff continue with pain management and medications. Dr. Dongas indicated that if conservative pain management continued to fail, then Plaintiff should explore neurosurgical options. (*Id.*).

In February 2005, Plaintiff saw a physician at a pain management clinic and received a cortisone injection. (Tr. 342). Plaintiff also began treatment with Dr. Bruce A. Ver-Steeg. (Tr. 342-44). Dr. Ver-Steeg documented Plaintiff's complaints of neck and lower back pain. Dr. Ver-Steeg adjusted Plaintiff's medications and suggested a course of physical therapy (Tr. 343-44).

In April 2005, Dr. Ver-Steeg noted that Plaintiff has had physical therapy, narcotic pain medications, NSAIDs, muscle relaxants, tricyclic antidepressants, and a trigger point injection at a pain clinic. (Tr. 336). Dr. Ver-Steeg also noted Dr. Sivanna's diagnosis that Plaintiff suffered from chronic spinal pain, degenerative disc disease of the cervical and lumbar spine, lumbar radicular pain, and myofascial pain. (*Id.*).

Dr. Ver-Steeg continued to prescribe pain medications to Plaintiff and made a referral for possible epidural or trigger point injections. (Tr. 338). In May 2005, Plaintiff received an epidural steroid injection. (Tr. 334-35).

**Testimony at the Administrative Hearing**

Plaintiff testified that he went to the company doctor when he was injured in September 2002. (Tr. 45). Plaintiff stated that he had a lot of bruising on his back. (Tr. 46). Plaintiff testified that the company doctors offered very little treatment other than

7

prescribing pain medications. He explained that the doctors placed him on work restrictions, but he still worked twelve to fourteen hour days. (Tr. 51-52). Plaintiff stated that he would work hours like these for two days, but by the third day he could not get out of bed because of the pain. (Tr. 52).

Plaintiff testified that he could not do any of the lifting that was required at his job. (Tr. 50). However, Plaintiff stated that his company would still require him to lift items that violated the work restrictions imposed by the doctors. (Tr. 50). Plaintiff explained that he would not do the lifting because he was afraid violating the doctor's order. (Tr. 50). He also explained that he felt like he was in a bad position because if he violated the doctor's order then it would potentially jeopardize his worker's compensation claim. (Tr. 50). Thereafter, Plaintiff indicated that Norment Industries terminated his employment in December 2002. (Tr. 48).

Plaintiff also stated that he tried to do the best he could on the April 2003 functional capacity evaluation that his company ordered as part of the worker's compensation procedures. However, he explained that he ended up in bed for the entire next day and informed the doctors of such information. Nevertheless, such information did not make it into the report. (Tr. 48-49). Plaintiff lost his worker's compensation benefits and eventually became homeless for a certain time period. (Tr. 52).

Plaintiff testified that he sought treatment at the Fargo VA. (Tr. 53). Plaintiff stated that he applied for, and was awarded the VA non-service connected disability pension. (Tr. 53).

8

Plaintiff also described his pain, the medications the VA doctors prescribed to him, side effects from such medications, and his physical limitations. Plaintiff explained that he has difficulty standing for extended periods of time and he often needs to lay down during the day. (Tr. 65, 67). Plaintiff also testified that heavy lifting and prolonged sitting aggravated his pain. (Tr. 60-67). Finally, Plaintiff testified that he could not perform his past job as a security guard because that job involved being on his feet at least seven hours day. Plaintiff also did not think he could physically protect himself or someone else if a dangerous situation arose. (Tr. 60).

*Vocational Expert's Relevant Testimony*

Warren Haagensen, a vocational expert, also testified that a person with Plaintiff's residual functional capacity could perform his past relevant work as a security guard. (Tr. 84). The ALJ's hypothetical limited Plaintiff to light to medium work. (Tr. 84-85).

However, the vocational expert also testified that Plaintiff could not perform his past work or any other work in the national economy if Plaintiff had to take unscheduled breaks to lay down for a brief period. (Tr. 85-86).

**The ALJ's Findings and Decision**

On January 23, 2006, the ALJ issued his decision denying Plaintiff's application for DIB. The ALJ acknowledged that he kept the record open for the submission of additional evidence. Plaintiff's attorney requested that the ALJ issue a subpoena to Dr. Bruce A. Ver-Steeg, Plaintiff's treating physician, to provide in-person testimony at a supplemental hearing in this case. The ALJ indicated that he attempted to obtain an opinion from Dr. Ver-Steeg on Plaintiffs condition through interrogatories. However, the

ALJ stated he did not receive a response from Dr. Ver-Steeg.  Nonetheless, the ALJ explained that Dr. Ver-Steeg's opinion was not necessary for him to make an informed decision because he had Dr. Ver-Steeg's treatment notes.  (Tr. 20).

The ALJ followed the sequential five-step procedure as set out in the rules.  *See* 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a).  The Eighth Circuit has summarized these steps as follows:  (1) whether the claimant is currently engaged in "substantial gainful activity;" (2) whether the claimant suffers from a severe impairment that "significantly limits the claimant's physical or mental ability to perform basic work activities;" (3) whether the claimant's impairment "meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the residual functional capacity [RFC][4] to perform his or her past relevant work;" and (5) if the ALJ finds that the claimant is unable to perform the past relevant work then the burden is on the ALJ "to prove that there are other jobs in the national economy that the claimant can perform." *Fines v. Apfel*, 149 F.3d 893, 894-95 (8th Cir. 1998).

The ALJ determined that Plaintiff met the requirements for the first two steps of the disability determination procedure.  The ALJ found that Plaintiff has not engaged in substantial gainful activity.  At step two, the ALJ found that Plaintiff's impairments are considered "severe" based on the requirements in the regulations.  (Tr. 30).  At step three,

---

[4] A claimant's RFC is the most the claimant can still do despite the claimant's physical and/or mental limitations.  20 C.F.R. § 404.1545.

the ALJ determined that Plaintiff's impairments do not meet or equal one of the listed presumptively disabling impairments.

At step four, the ALJ determined that Plaintiff had the following RFC: (1) limited to a light to medium level of work; (2) lift and carry up to 20 pounds occasionally and up to 10 pounds frequently; and (3) standing and /or walking and sitting (with normal breaks) for about 6 hours in an 8 hour workday. (Tr. 30).

Based on the RFC and the testimony of the vocational expert, the ALJ determined that Plaintiff could perform his past relevant work as a security guard. (Tr. 30-31). Accordingly, the ALJ found that Plaintiff was not disabled under the regulations imposed by the Social Security Act.

**Standard of Review**

This Court will affirm the ALJ's findings that the claimant was not under a disability if the findings are supported by substantial evidence based on a review of the entire record. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." *Id.* at 747 (quoting *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998)). However, the review the Court undertakes must go beyond solely the examination of the record for evidence in support of the Commissioner's decision. *Id.* The Court must additionally examine the record for evidence that detracts from that decision. *Id.*

Nevertheless, as long as there is substantial evidence to support the decision, this Court will not reverse it simply because substantial evidence exists in the record that

11

would support a contrary outcome or because this Court might have decided differently. *Id.*

**Discussion**

Plaintiff argues that this Court should reverse or remand the ALJ's unfavorable decision for two primary reasons.  First, Plaintiff asserts that the ALJ failed to fulfill his duty to develop the evidentiary record.  Next, Plaintiff argues that the ALJ's decision was not supported by substantial evidence.

**The ALJ Failed to Fully and Fairly Develop the Record**

The ALJ has a duty to fully and fairly develop the record even if the claimant is represented by an attorney.  *Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000) (citation omitted).  The Court will remand the case if the ALJ's failure to develop the record results in unfairness or prejudice to the Plaintiff.  *Onstad v. Shalala*, 999 F.2d 1232, 1234 (8th Cir. 1993).

"The ALJ possesses no interest in denying benefits and must act neutrally in developing the record."  *Snead v. Barnhart,* 360 F.3d 834, 838 (8th Cir. 2004); (citing *Richardson v. Perales,* 402 U.S. 389, 410 (1971) ("The social security hearing examiner, furthermore, does not act as counsel.  He acts as an examiner charged with developing the facts.").

Here, the ALJ failed to fully and fairly develop the record.  Indeed, the ALJ conceded the record was not fully developed at the administrative hearing.[1] (Tr. 86).  The

---

[1] The ALJ stated, "Counsel, you are going to try to beef up this record, aren't you?"  (Tr. 86).

ALJ acknowledged that the doctors in Alabama "flipped-flopped" in their opinions as to Plaintiff's physical limitations. (Tr. 87). Thus, the ALJ asked Plaintiff's attorney to track down (1) a copy of the April 2003 functional capacity evaluation and (2) written testimony from Dr. Bruce A. Ver-Steeg, Plaintiff's treating physician. (Tr. 87, 383).

Notably, the ALJ decided to keep the record open for the purpose of obtaining "*more documentation in this file.*" (Tr. 87) (emphasis added). The ALJ also stated that he would not close the record until Plaintiff's attorney and the ALJ were comfortable that the record was complete. (Tr. 87).

On August 9, 2005, counsel for Plaintiff submitted a copy of the April 2003 functional capacity evaluation ("FCE") to the ALJ. (Tr. 383). Plaintiff's counsel reminded the ALJ that this FCE was done at the request of a company doctor retained by Worker's Compensation of Alabama. (*Id.*).

Plaintiff's attorney also informed the ALJ of his unsuccessful attempts in obtaining written testimony from Dr. Ver-Steeg. (Tr. 383). As such, Plaintiff's attorney requested that the ALJ subpoena Dr. Ver-Steeg to compel him to provide in-person testimony at a supplemental hearing in this matter. (Tr. 384).

On August 22, 2005, ALJ Holloway indicated that he would not issue a subpoena, but would send interrogatories to Dr. Ver-Steeg.[2] (Tr. 382). The ALJ permitted Plaintiff's Counsel to propose interrogatories. (*Id.*).

---

[2] "If an ALJ denies a claimant's request for a subpoena, the ALJ must provide the claimant with written notification of the denial of the request, and enter both the request and the denial notification into the record as exhibits. The denial notification must

13

On August 25, 2005, Plaintiff's attorney sent a list of proposed interrogatories to the ALJ to be served upon Dr. Ver-Steeg. (Tr. 378). Plaintiff also included a blank Physical Residual Functional Capacity Assessment form to be filled out by Dr. Ver-Steeg. (Tr. 378).

On September 2, 2005, ALJ Holloway told Plaintiff's attorney that "it is *necessary to obtain evidence from Dr. Bruce A. Ver-Steeg in order to make a decision*" in Plaintiff's claim for DIB. (Tr. 377) (emphasis added). The ALJ indicated that he would send a copy of Dr. Ver-Steeg's interrogatory responses to Plaintiff and allow Plaintiff to: (1) comment on the responses; (2) submit more evidence, (3) ask the ALJ to submit additional interrogatories to Dr. Ver-Steeg, or (4) request a supplemental hearing. (Tr. 377).

On November 15, 2005, the ALJ mailed the interrogatories to Dr. Ver-Steeg and requested that he respond no later than 20 days from the date of the letter. (Tr. 365). However, on January 23, 2006, ALJ Holloway denied Plaintiff's application for benefits without ever receiving a response from Plaintiff's treating physician. The ALJ explained that Dr. Ver-Steeg's opinion was not necessary for him to make an informed decision even though he stated the complete opposite on September 2, 2005, when he indicated that "it is *necessary to obtain evidence from Dr. Bruce A. Ver-Steeg in order to make a decision*." (Tr. 20, 377) (emphasis added). Even more disturbing is that the ALJ did not

---

include rationale that explains why the ALJ declined to issue a subpoena . . . ." Hallex I-2-5-78, 1992 WL 601841. Here, the ALJ failed to explain why he declined to issue a subpoena.

even notify Plaintiff or his attorney of the non-receipt of Dr. Ver-Steeg's responses before issuing his decision.

On May 8, 2006, Alan Duppler, a staff attorney at the Department of Veterans Affairs, informed Plaintiff's attorney of the following:

1. The records maintained by the Fargo VA Medical Center show that it received the requests from Plaintiff's attorney seeking information as to his client's disability from Dr. Ver-Steeg in July 2005 and September 2005. (Tr. 398).

2. The records also show that the Fargo VA Medical Center received a request for similar information in March 2006 with respect to a student loan belonging to Plaintiff. (Tr. 398).

3. However, there is "no record of receiving a request for information regarding [Plaintiff] from an Administrative Law Judge or from the Social Security Administration." (Tr. 398).

The ALJ has a duty to develop the administrative record and to make "every reasonable effort to help [the claimant] get medical reports from [his or her] own medical sources." *Devora v. Barnhart*, 205 F.Supp.2d 164, 172 (S.D.N.Y. 2002) (citation omitted); *see also* 20 C.F.R. § 404.1512(d).

Here, the ALJ failed to follow up with Dr. Ver-Steeg. Indeed, "[t]he duty of the ALJ to develop the record is particularly important when it comes to obtaining information from a claimant's treating physician." *Id.* at 172-73. This is because, "[a] treating physician's opinion is due controlling weight if that opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." *See Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (internal quotations and citations omitted).

Also, the ALJ is authorized to issue a subpoena to obtain the production of a claimant's medical record and the testimony of necessary witnesses. *See* 42 U.S.C. § 405(d). Notably, "[t]he ALJ must issue a subpoena when an individual has evidence or can offer testimony that the ALJ determines is reasonably necessary for the full presentation of the case, and the ALJ has exhausted other means of obtaining this evidence or testimony." Hallex I-2-5-78, 1992 WL 601841.

Here, the ALJ told Plaintiff's attorney that "it is *necessary to obtain evidence from Dr. Bruce A. Ver-Steeg in order to make a decision*" in Plaintiff's claim for DIB. (Tr. 377) (emphasis added). The ALJ should have followed up with Dr. Ver-Steeg when he did not receive a response to the interrogatories either by re-sending them or issuing a subpoena.³ Thus, the ALJ's failure to fully develop the record was unfair and prejudicial to Plaintiff.

## **The ALJ's Decision Was Not Supported by Substantial Evidence**

The Court also finds that the ALJ's decision was not based on substantial evidence because he failed to fully and fairly develop the record as discussed above. Indeed, the ALJ conceded the record was not fully developed.

Finally, Plaintiff submitted additional evidence to the Appeals Council in May 2006. Dr. Ver-Steeg opined in Plaintiff's loan discharge application that Plaintiff is "virtually unable tolerate any activity because of severe neck and low back pain which

---

³ "The issuance of a subpoena may be necessary when a person having knowledge of a material fact or possession of documentary evidence is reluctant or unwilling to testify or provide the evidence." Hallex I-2-5-78, 1992 WL 601841.

radiates into the left hip and leg, due to degenerative disc disease of the cervical lumbar spine with severe peripheral neuropathy." (Tr. 399, 386-88). Dr. Ver-Steeg also indicated that Plaintiff was 100% disabled and would never have the ability to engage in any form of employment. (Tr. 387).

The Appeals Council admitted this additional information into evidence. (Tr. 11). However, Appeals Council merely indicated that they considered the additional evidence and found that this information does not provide a basis for changing the ALJ's decision. Also, Defendant argues that Dr. Ver-Steeg's opinion is conclusory and the ALJ would not have changed his decision if such information was available to him. [Docket No. 10].

"In cases involving the submission of supplemental evidence subsequent to the ALJ's decision, the record includes that evidence submitted after the hearing and considered by the Appeals Council." *Bergmann v. Apfel*, 207 F.3d 1065, 1068 (8th Cir. 2000). Thus, the Court must determine whether the ALJ's decision "is supported by substantial evidence on the record as a whole, including the new evidence submitted after the determination was made." *Id.* at 1068 (internal quotations and citation omitted).

A decision from the Eighth Circuit on new evidence is instructive here. *Jenkins v. Apfel*, 196 F.3d 922, 924 (8th Cir. 1999). In that case, the claimant submitted medical reports from a treating physician, which indicated that the claimant had less residual functional capacity than the ALJ had determined. *Id.* at 924. The Eighth Circuit reversed the ALJ's finding that the claimant was not disabled. The appellate court reasoned that the new evidence contradicted the ALJ's reason for relying on the non-treating doctor's assessment. *Id.* at 927.

17

Similarly, the ALJ in this case relied on a non-treating physician's functional capacity report and failed to consider the opinion of Plaintiff's treating physician because he did not fully develop the record.

The Court must evaluate this new evidence and determine how the ALJ would have weighed such evidence if it had existed at the original hearing. The Court finds that if the new evidence was before the ALJ, then the ALJ would have adopted the treating physician's assessment of Plaintiff's physical limitations or at a minimum sought more information from Plaintiff's treating physician.

A treating physician's opinion is due controlling weight if that opinion is well-supported by medical evidence and is not inconsistent with the other substantial evidence in the record. *Hogan*, 239 F.3d at 961. On the other hand, "[t]he opinion of a consulting physician who examines a claimant once or not at all does not generally constitute substantial evidence." *Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir. 1998).

Thus, the ALJ's reliance on the non-treating physician's functional capacity evaluation is not substantial evidence in light of the conflicting assessment provided in the newly submitted evidence. Indeed, the newly submitted evidence undermines the ALJ's reasons for discounting Plaintiff's credibility.

Therefore, the ALJ's conclusion on Plaintiff's residual functional capacity was not supported by substantial evidence. Consequently, the vocational expert's testimony was not substantial evidence that Plaintiff could perform the job of a security guard.

The Court finds that Dr. Ver-Steeg's opinion was crucial to fully understanding Plaintiff's limitations. Plaintiff asked for assistance in obtaining this evidence. The ALJ

18

admitted that he needed to obtain more evidence from Dr. Ver-Steeg in order to decide Plaintiff's claim for DIB.  However, the ALJ failed to follow up with Dr. Ver-Steeg when he did not receive a response to the interrogatories.  The ALJ also refused to issue a subpoena.  As such, this critical information was never obtained and the record was not fully and fairly developed.

Therefore, the Court recommends that this case be remanded.  The ALJ should re-send the interrogatories and residual functional capacity form to Plaintiff's treating physician, Dr. Bruce A. Ver-Steeg.  The ALJ should also conduct a supplemental hearing after receiving Dr. Ver-Steeg's responses.  If Dr. Ver-Steeg fails to respond, then the ALJ should issue a subpoena to Dr. Ver-Steeg to obtain such information and to provide in-person testimony at a supplemental hearing in this matter.

**<u>Conclusion and Recommendation</u>**

Accordingly, the Court **recommends** that Plaintiff's Motion for Summary Judgment **be granted** and the Commissioner's Motion for Summary Judgment **be denied.**  The Court **recommends** that that this case be **remanded** to the Commissioner for a **supplemental hearing** consistent with this opinion.

Dated:  May 21, 2007

                                        s/ Arthur J. Boylan
                                        Arthur J. Boylan
                                        United States Magistrate Judge

**Notice**

Pursuant to Local Rule 72.2 (b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.  This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals.  Written objections must be filed with the Court before **June 5, 2007.**